(153 App. Div. 630.)

## CARROLL v. SILVER CREEK GAS & IMPROVEMENT CO.

(Supreme Court, Special Term, Erie County.  October, 1912.)

1. GAS (§ 7*)—FRANCHISE—USE OF STREETS.

   Where the right to use the streets of a city has been granted in general terms to a gas company, such grant contemplates the extension of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

  139 N.Y.S.—11

mains along old streets as subsequently extended and through new streets as opened in accordance with the future growth of the city.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 2; Dec. Dig. § 7.*]

2. MINES AND MINERALS (§ 77*)—OIL AND GAS LEASE—CONTRACT WITH LANDOWNER—EFFECT.

A landowner, having granted to plaintiff the exclusive right to drill for oil and gas on her land, subsequently subdivided the tract, receiving from plaintiff a release of its rights in the subdivided tract, except as to a well already down and to piping in connection with it, but reserving the right, if the owner, or her assignee, should drill for oil or gas, or grant permission to any other person or corporation to drill for oil or gas, on, or remove the same from, any of the lots or streets, or "lay gas or oil pipes therein," to reinstate its rights under the lease. *Held*, that such release should be construed only as applying to the drilling of oil and gas wells on the property, and on removal of oil and gas therefrom, and did not entitle plaintiff to renew operations' on the village granting a right to another gas company to lay mains in the streets of the addition to supply consumers with gas from other sources.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 204; Dec. Dig. § 77.*]

Suit by William E. Carroll, as receiver of the property of the South Shore Natural Gas & Fuel Company, against the Silver Creek Gas & Improvement Company. On motion by plaintiff for final judgment on the pleadings, and motion by defendant to dissolve a temporary injunction previously granted. Motion for judgment denied, and injunction vacated.

George Clinton, Jr., of Buffalo, for plaintiff.
George Towne, of Silver Creek, for defendant.

WHEELER, J. Both motions are made upon the pleadings in this action, and the disposition of both motions turns upon facts alleged in the complaint and set forth in the answer. None of the essential and controlling facts are in dispute, and the question presented is whether those facts entitle the plaintiff to the relief asked.

The corporation of which plaintiff is receiver, and the defendant, are each corporations engaged in producing and supplying natural gas to consumers, and are rivals for their patronage. One C. Edele Swift was the owner of about 28 acres of land in the township of Hanover, Chautauqua county, N. Y., lying within the corporate limits of the village of Silver Creek. On the 15th day of July, 1909, she executed a lease of this property to the plaintiff's company, whereby she granted to it—

"the oil and gas in and under the premises hereinafter described, together with the exclusive right to drill and sink wells therefor, and to take and remove the same therefrom, the right to dig and use water wells thereon, the exclusive right to lay pipes and mains, and to conduct oil and gas from and through the said premises, and an exclusive right of way therefor upon, in, through, and over the said premises."

Later the tract in question was surveyed and divided into village lots, with streets running through and across it. It is known as "Swift Park," or "Swift's Addition." On March 20, 1911, Mrs. Swift, pursuant to section 144 of chapter 64, Laws of 1909 (Village Law),

offered to dedicate for public streets the streets in question, and on the same day the proposed dedication was duly accepted by the official action of the board of trustees of the village of Silver Creek. At the same time, by quitclaim deed, Mrs. Swift conveyed to the village of Silver Creek the fee of the streets.

On the 29th day of August, 1911, the plaintiff and Mrs. Swift entered into an agreement, reciting the making of the prior lease of June 15, 1909, and that Mrs. Swift desired to plat the property into building lots, with streets crossing the same, and to sell and convey such streets to the village of Silver Creek. The instrument then proceeded to release to her—

"all right to drill further oil, gas, or water wells on or in said lots or streets as platted on a plan or map of said premises made in September, 1910, by B. R. Train, surveyor, a copy of which is annexed hereto, and the right to lay pipes and mains in, across, or on any lot platted on said premises."

This release contained, however, this provision:

"Provided, further, that in case the party of the second part, her heirs, executors, administrators, or assigns, shall drill for oil or gas upon any of the lots or streets laid down upon the annexed plan, or shall remove oil or gas therefrom, or lay gas or oil pipes therein, or shall give or grant to any other person or persons, firm or firms, corporation or corporations, the right to drill for oil or gas upon, or remove the same from, any of said lots or streets, or to lay gas or oil pipes therein, then and in that event this release shall be void and of no effect as to the lot or lots, street or streets, upon which said drilling is done, or from which gas or oil is so removed, or with respect to which said right is given or granted, and as to such lot or lots, street or streets, the lease hereinbefore mentioned shall be reinstated in full force and effect."

It further appears that by agreements made on October 27, 1903, and February 23, 1904, the village of Silver Creek gave to the defendant the right to lay and maintain mains and supply pipes in and along all the streets in said village for the purpose of supplying gas for heating and lighting purposes. The defendant, pursuant to the franchise so given, proceeded to lay its pipes and mains in the streets within the "Swift Addition," so called, originally covered by the oil and gas lease given the South Shore Natural Gas & Fuel Company.

This latter company, through its receiver, now contests this right, claiming that by virtue of the prior lease, and by the terms of its release, providing that the "lease heretofore mentioned shall be reinstated in full force and effect," if the grantor shall give or grant to any other person or corporation "the right to drill for oil or gas or remove the same from any of said lots or streets, *or to lay gas or oil pipes therein,*" its former rights in the original lease have been revived, and it thereby enjoys the exclusive right to lay pipes in the streets in question.

It is to be noted in this connection that Mrs. Swift has not, by any affirmative action on her part, given or granted to any person or corporation the right to lay or extend pipes in the streets running through or across the tract surveyed and platted by her into village lots. The defendant bases its right to lay its mains and pipes in these streets, not by any grant from Mrs. Swift, but by virtue of its existing franchise from the village of Silver Creek, granted in 1903.

[1] Unless there is something in the agreements existing between the plaintiff's company and Mrs. Swift conferring on the plaintiff the exclusive right to lay mains and pipes in the new streets opened by Mrs. Swift, then the defendant, by virtue of its franchise from the village, has the undoubted right to so lay and extend its gas pipes and mains. It is a rule of law that, where the right to use the streets of a municipality has been granted in general terms to a corporation engaged in supplying gas for public and general use, such grant contemplates that new streets are to be opened, and old ones extended from time to time, and the privilege may be exercised in the new streets, as well as in the old. People ex rel. Woodhaven Gaslight Co. v. Deehan, 153 N. Y. 528, 47 N. E. 787; People ex rel. N. Y. & R. Gas Co. v. Cromwell, 89 App. Div. 292, 85 N. Y. Supp. 878.

[2] The inquiry is therefore directed to the agreements set forth between the plaintiff and Mrs. Swift, for the purpose of ascertaining whether the plaintiff now enjoys any exclusive right to lay pipes in the streets within "Swift's Addition." By reading the first agreement of June 15, 1909, we are impressed with the fact that this agreement, in its entire scope and all its provisions, contemplated simply the granting to the plaintiff of the right to drill wells for oil and gas, and to lay the necessary piping to care for such oil or gas when found.

At the time this lease or grant was given, there was no suggestion of the possible subdivision of the tract into village lots, or the extension of any streets through it, or the building of houses thereon with a possible demand for natural gas. It was apparently purely and simply a development venture, where the plaintiff proposed to sink wells with the expectation of producing oil or gas, and of piping it elsewhere, rather than for use on the property itself. Evidently these hopes were not wholly realized, for only one well appears to have been sunk, and further operations abandoned. In any event, some two years after the giving of this lease or grant to the plaintiff's company, we find Mrs. Swift subdividing the tract into village lots and running streets through it. And we also find the plaintiff, at substantially the same time, by a written instrument, canceling and releasing its rights in the subdivided tract, excepting and reserving, however, its right in a certain well already down, and to piping laid in connection with it. This release, however, contained the proviso already quoted—that if Mrs. Swift, her heirs "or assigns," should drill for oil or gas, etc., "or shall give or grant to any other person or persons, firm or firms, corporation or corporations, the right to drill for oil or gas upon or remove the same from any of said lots or streets, or to lay gas or oil pipes therein, then and in that event this release shall be void and of no effect as to the lot or lots, street or streets, upon which said drilling is done, or from which gas or oil is so removed, or with respect to which said right is given or granted, and as to such lot or lots, street or streets, the lease hereinbefore mentioned shall be reinstated in full force and effect."

This proviso evidently relates to and contemplates the possible resumption of the same class of operations provided for in the original lease or grant. I find nothing in the lease prohibiting supplying private consumers with gas from other sources. It is true, the release

uses the words, *"or to lay gas or oil pipes therein,"* but we do not think these words should be wrested from the general context and subject-matter to which they relate, so as to give them a force and purpose not contemplated by the parties to the agreement. Had it been the purpose and intent of the parties to provide against the laying of service pipes in the streets by any one other than the plaintiff for the purpose of supplying gas to private householders on the streets, it would have been a very simple matter to have expressed that purpose in simple and plain words, which are not present in this release in question.

We are of the opinion that, to justify a construction forbidding a public service corporation from carrying out the purposes of its organization of supplying gas, and exercising the franchise in the streets of the village given by the municipal authorities, the language employed to accomplish such a purpose must be plain and explicit.

The release in question, on which the plaintiff relies, recites that the tract was to be subdivided into lots, and streets run through it and conveyed to the village. The plaintiff must have known that lots would be sold and dwellings erected on them, and the occupants would require gas and water. It is significant, therefore, that with that knowledge, had it been contemplated that no other company should be permitted to operate in the streets, the release should not have so stated in so many words. On the other hand, it can be urged with force that, when the plaintiff relinquished its rights in the tract in order that streets might be opened through it, it at least impliedly contemplated those streets would be used like all other streets in a well-regulated village, by the laying of sewers and of water and gas mains for the accommodation and health of those living on the street.

We should not deprive those living on such streets of the benefit of all these things, unless the instrument by which such benefits are withheld clearly so declares. I am unable to find, in the agreements in question, any such clearly expressed purpose or provision, or any clause restraining the defendant from laying its mains and pipes for the purpose of supplying houses on the streets with gas.

Further, in order to be entitled to the relief asked, the plaintiff must show that either Mrs. Swift or her grantee has granted to others "the right to lay gas or oil pipes." This evidently contemplates the subsequent granting to others of any such rights. Mrs. Swift has done nothing, so far as she is concerned, but dedicate and deed the streets for public highways to the village. This the release contemplated she should do.

The village of Silver Creek, as grantee of these streets, has done nothing since the execution of the release. The defendant has been given no additional franchise beyond those conferred by the village in 1903 and 1904. Can it be fairly said that the assertion by the defendant of rights conferred by that franchise is equivalent to a subsequent grant by Mrs. Swift, or by the village? We think not.

If the plaintiff's contention be true that all his rights under the prior grant have been revived, then they were revived the moment the release was given, for the defendant's franchise was then in force; for

the proviso is not against the actual laying of pipes in streets, but the granting of the right to do so. It also follows, if the plaintiff's position is correct, that the plaintiff would have the right to set up its derricks and drill for oil or gas right in the public street. We mention these things for the purpose of showing to what absurd results the plaintiff's position would lead, and to demonstrate, so far as may be, that the parties, when they executed the release in question, could not have intended to provide against the situation presented, so as to preclude the defendant, a public service corporation, from laying pipes and mains under its existing franchise for the benefit of persons occupying houses on the newly opened streets.

These considerations lead us to the conclusion that the motion for judgment must be denied, and the injunction vacated. So ordered, with $10 costs to the defendant.